**IN THE COURT OF APPEALS OF IOWA**

No. 18-0136
Filed June 20, 2018

**IN THE INTEREST OF O.H. and P.H.,**
**Minor Children,**

**T.H., Father,**
      Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan C. Cox, District Associate Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

Thomas A. Hurd of Glazebrook & Hurd LLP, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Karl Wolle of Juvenile Public Defender Office, Des Moines, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**POTTERFIELD, Judge.**

A father appeals the termination of his parental rights to his children O.H., born in March 2007, and P.H., born in June 2015.[1]  The father's rights as to P.H. were terminated pursuant to Iowa Code section 232.116(1)(d),(h), (i), and (j) (2017).  The father's rights as to O.H. were terminated pursuant to Iowa Code section 232.116(1)(d),(f), (i), and (j).  On appeal, the father argues there is not clear and convincing evidence to terminate parental rights on any of the grounds for termination, termination is not in the children's best interests, he should have received a six-month extension of time, and the children should have been placed with a relative under a guardianship.

**I. Background Facts and Proceedings.**

O.H. and P.H. have different mothers.  O.H. and P.H. lived with the father and P.H.'s mother.  P.H.'s mother has another child, T.W., who is in the physical custody of his father, but who visited his mother at the residence with the father, O.H., and P.H.  In September 2016, P.H.'s mother and the father sexually abused T.W. while O.H. was in the home and P.H. was in the same room.  The children were removed in October.  Both O.H. and P.H. were taken to the emergency room for an extensive lack of personal hygiene.  The children were placed with their paternal grandparents and adjudicated as children in need of assistance (CINA).

The father and P.H.'s mother were both arrested and charged with sexual abuse in the second degree and neglect of a dependent person.  The court entered a no-contact order prohibiting the father from contacting "any person under the age

---

[1] Neither O.H.'s nor P.H.'s mother is a party to this appeal.

of eighteen." The father was ordered to participate in all available jail programming along with any services offered by the Iowa Department of Human Services (DHS).

In November, O.H. was placed in the custody of her maternal grandparents and P.H. was placed in the custody of her maternal aunt and uncle. Both children remain in these placements, and both placements report they are able to provide permanent homes to the children.

In December, the court entered a dispositional order denying the father's request for visitation. The father appealed the order to our court, and we affirmed the denial of visitation, finding the father has "yet to address the issues that led to the CINA action." *In re O.H.*, No. 16-2209, 2017 WL 2184632, at *2 (Iowa Ct. App. May 17, 2017).

In May 2017, the father entered an *Alford* plea to lascivious acts with a child, enticing a minor under thirteen, two counts of neglect of a dependent person, and lascivious acts with a child by way of solicitation for his actions with T.W. The father was sentenced to consecutive terms of incarceration not to exceed a total of twenty-five years for lascivious acts with a child, enticing a minor under thirteen, and lascivious acts with a child by way of solicitation. The Iowa Department of Corrections has determined the father's tentative discharge date[2] is February 2028.

---

[2] The juvenile court noted the tentative discharge date was the only information presented about the length of the father's sentence and found it to be sufficient to find under Iowa Code section 232.116(1)(j) that it is unlikely the father will be released for a period of five or more years.

A termination hearing was held in December. The juvenile court entered a termination order terminating the father's parental rights in January 2018. The father appeals.

## II. Standard of Review.

We review the juvenile court's decision to terminate de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "Grounds for termination must be proven by clear and convincing evidence." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "Our primary concern is the best interests of the child[ren]." *Id.*

## III. Discussion.

The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(d),(i), and (j) as to both children, section 232.116(1)(h) as to P.H., and section 232.116(1)(f) as to O.H.[3] The father contends the requirements of each section are not established by clear and convincing evidence. "We only need to find grounds to terminate parental rights under one of the sections cited by the district court in order to affirm its ruling." *In re R.K.*, 649 N.W.2d 18, 19 (Iowa Ct. App. 2002).

The juvenile court may terminate a parent's rights pursuant to subsection (j) when the court finds that both of the following have occurred:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
> (2) The parent has been imprisoned for a crime against the child, the child's sibling, or another child in the household, or the

---

[3] *See In re L.M.*, 904 N.W.2d 835, 840–41 (Iowa 2017) (Cady, J., dissenting) (stating 232.116(1)(h) is the wrong statute to apply when terminating parental rights because a parent is incarcerated).

parent has been imprisoned and it is unlikely that the parent will be released from prison for a period of five or more years.

Iowa Code § 232.116(1)(j).

The father does not dispute the children were adjudicated CINA or that the children were transferred from his custody. Instead, he argues the State has not proved by clear and convincing evidence it is unlikely the father will be released from prison within a five-year period. The State provided the juvenile court with information from the Department of Corrections that the father's tentative discharge date was not until February 2028.[4] It is this evidence from which the juvenile court determined the father's release date would not occur for a period of more than five years.

The father's tentative discharge date is not necessarily the date he will be released from prison. Although the father may be paroled from prison before he is discharged, we find it is unlikely he will be released for more than five years. The father was sentenced to a term of incarceration not to exceed twenty-five years, his projected discharge date is in 2028, and the father has not yet started sex-offender treatment programs. All of these factors make it unlikely the father will be released within five years. Consequently, the State proved by clear and convincing evidence grounds to terminate pursuant to paragraph (j).[5]

---

[4] Our court has previously used the projected release date, not projected discharge date, as grounds for Section 232.116(1)(j). *See In re D.D.*, No. 14-0445, 2014 WL 3511909, at *1 (Iowa Ct. App. July 16, 2014) (terminating parental rights under subsection (j) based on projected release date).

[5] This case is distinguishable from the recent supreme court case *In re Q.G.*, as that case is a termination case under chapter 600A for abandonment and a crime against a child. ___ N.W.2d ___, ___, 2018 WL 2071823, at *11–13 (Iowa 2018). Although that father also was incarcerated at the time of the termination trial, he testified he expected to be released within a year of the termination hearing, was a model prisoner, participated in treatment

Next, the father argues termination is not in the children's best interests. *See Id.* § 232.116(2). In reaching our conclusion, we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* The father is currently incarcerated for sexually abusing a child in his home while P.H. was present. The father is not in a position to provide physical, mental, or emotional care for the children. Termination is in O.H. and P.H.'s best interests.

The father also argues the juvenile court erred by not granting him another six months to achieve permanency. Iowa Code section 232.104(2)(b) allows the court to grant parents an additional six months when there are "specific factors, conditions, or expected behavioral changes" to cause the court to believe there will no longer be a need for removal at the end of the six months. The father is currently incarcerated with a projected discharge date in 2028. The juvenile court reasonably found the need for removal was likely to continue to exist at the end of an additional six months.

Finally, the father argues the children should have been placed in a guardianship with a relative. "[A] guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018). Guardianship is not as permanent as termination and adoption. *Id.* at 478. Where, as here, relative custodians are willing to adopt the children, termination is appropriate.

---

programs, and had employment and a residence lined up for his release. Here, section 232.116(1)(j) specifically authorizes our court to terminate parental rights when a parent committed a crime against a child in the household and is likely to be imprisoned for five or more years.

We find the juvenile court's termination of the father's rights under section 232.116(1)(j) is supported by clear and convincing evidence, termination is in the best interests of the children, and neither a six-month extension nor a guardianship are appropriate.

**AFFIRMED.**