# IN THE COURT OF APPEALS OF IOWA

No. 20-0480
Filed August 19, 2020

**IN THE INTEREST OF A.M.,**
**Minor Child,**

**J.M., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Plymouth County, Andrew Smith, District Associate Judge.

A mother appeals the termination of her parental rights pursuant to Iowa Code chapter 232 (2019).  **AFFIRMED.**

Jessica R. Noll of Deck Law PLC, Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Debra S. De Jong of De Jong Law Firm, P.C., Orange City, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

The mother of this six-year-old child challenges the juvenile court's order terminating her parental rights. She makes the following claims on appeal: (1) the juvenile court erred by denying her request for new counsel; (2) the State failed to prove statutory grounds for termination; (3) termination of her rights is not in the child's best interests; and (4) she should be given additional time to work toward reunification.

## I. Background Facts.

Before addressing the issues, some background facts are in order. Even before the events leading to the initiation of this case occurred, the child was living at the home of the child's maternal grandparents. The Iowa Department of Human Services (DHS) resumed involvement with the family when one of the child's half-siblings sexually abused the child. While that problem was being investigated and addressed, it was discovered the mother was staying in a motel with her boyfriend, a man who stabbed her several times a few months earlier. When DHS workers discovered that the mother was still in a relationship with that man, the child was formally removed from the mother's care for the child's safety and officially placed with the maternal grandparents. This occurred in December 2018. Around the time of removal, a DHS worker asked the mother to submit to a test of her hair to check for illegal drugs. The mother refused.

Following removal, the mother initially got her own apartment and began exercising visitation. However, her participation in visitation was not consistent or long-lived. She had only five visits with the child between February and April 2019. After a visit in early April 2019, the mother disappeared in terms of visiting the child

or participating in services. She could not be found at her place of employment or her apartment, and her car was gone. The mother did not resurface until August 2019. The child began experiencing a great deal of anxiety related to the mother's sporadic involvement in the child's life.

After the mother resurfaced, she began to exercise regular visits, but the visits were supervised. The mother's visits with the child were hampered when the maternal grandparents moved to Nebraska with the child in December 2019.[1] During the fall of 2019, the mother began mental-health and substance-abuse treatment that had been recommended. Unfortunately, the mother dropped out of both treatment programs within approximately one month. By the time of the termination hearing in February 2020, at which the mother participated by telephone and declined to testify, the mother had moved to Illinois with her abusive boyfriend, had no job, had no vehicle, had no housing, and was not involved with counseling.

Based on these circumstances, the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2019). The mother appeals. The father's rights were also terminated, but he has not appealed.

## II.    Standard of Review.

Regarding the denial of the mother's attorney's motion to withdraw, we review for an abuse of discretion. *In re A.W.*, No. 17-0917, 2017 WL 4049236, at *3 (Iowa Ct. App. Sept. 13, 2017) (citing *State v. Brooks*, 540 N.W.2d 270, 272 (Iowa 1995)). As to the decision to terminate the mother's rights, our review is de

---

[1] The DHS approved the move.

novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). On our de novo review, we are not bound by the juvenile court's factual findings, but we give them weight, especially in assessing the credibility of witnesses. *Id.*

### III.  Discussion.

Termination proceedings under Iowa Code chapter 232 follow a three-step analysis: (1) determine whether any ground for termination under section 232.116(1) has been established; (2) determine whether the best-interest-of-the-child framework set forth in section 232.116(2) supports termination of parental rights; and (3) consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights. *In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016). As noted, the mother challenges this analysis, the denial of her request for new counsel, and the denial of her request for additional time for reunification. We address each challenge separately.

### A.     Denial of Request to Substitute Counsel.

At 3:52 p.m. on the day before the scheduled termination hearing, the mother's attorney filed a motion to withdraw. The attorney cited a breakdown of the attorney-client relationship and noted the mother requested substitute counsel. A hearing on the motion was conducted the next day at the start of the 1:30 p.m. termination hearing. After hearing from the parties, the juvenile court denied the motion. The mother challenges this denial.[2]

---

[2] In her appellate filing, the mother identified this issue as challenging the juvenile court's denial of the mother's request to replace counsel. In the body of that section of the filing, the mother makes passing reference to a claim of ineffective assistance of counsel. To the extent the mother is raising an ineffective-assistance-of-counsel claim, we deem the issue waived due to the mere passing reference to the issue coupled with, at best, a perfunctory argument about it. *See*

Termination proceedings necessarily involve some degree of urgency, as permanency for the child is at stake. *See In re J.C.*, 857 N.W.2d 495, 502 (Iowa 2014) ("Courts are obliged to move urgently to achieve the ends that will serve the child's interests because childhood does not 'await the wanderings of judicial process.'" (quoting *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987))). Here, the attorney had been representing the mother for approximately fourteen months, yet no complaints about the attorney had been lodged until late in the afternoon the day before the termination hearing, which had already been continued two previous times. This timing alone raises suspicion as to the motive behind the mother's request. Besides the fact the mother's attorney was familiar with the case and zealously represented the mother throughout, the attorney reported he was prepared to proceed and demonstrated that preparation by the competent manner in which the attorney performed at the hearing.

When questioned about the basis for her request to replace counsel, the mother asserted there was evidence she wanted to submit that had not been submitted, but she gave no understandable explanation of what that evidence was or why she could not present it at the termination hearing that was being held that very day. Furthermore, the attorney informed the juvenile court that there was no evidence of which he had been made aware that the mother wanted to present that was not presented. Finally, with the benefit of hindsight, it is apparent the mother's claim regarding evidence she wanted to present was not genuine; she

---

*Goode v. State*, 920 N.W.2d 520, 524 (Iowa 2018) (noting the failure to clearly identify an issue constitutes waiver); *State v. Tyler*, 867 N.W.2d 136, 166 n.14 (Iowa 2015) (indicating a "passing reference" to an issue in a brief is insufficient).

chose not to present any evidence at the termination hearing immediately thereafter and expressly declined to testify to rebut any of the allegations supporting termination. Under these circumstances, the juvenile court acted appropriately in denying the requested withdrawal and replacement of the mother's attorney, and there was no abuse of discretion.

## B. Statutory Grounds for Termination.

As noted, the juvenile court found grounds for termination under both section 232.116(1)(e) and (f). The mother challenges both grounds. We need not address both grounds, as there only needs to be sufficient proof of one ground in order to affirm. *In re R.K.*, 649 N.W.2d 18, 19 (Iowa Ct. App. 2002). We choose to address the grounds for termination under section 232.116(1)(f), which permits the juvenile court to terminate parental rights if it finds all of the following:

> (1)    The child is four years of age or older.
> (2)    The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3)    The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4)    There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother challenges only the juvenile court's finding regarding the fourth element, so we do not address the first three.

As to the fourth element, the mother focuses on the child's move to Nebraska with the grandparents, claiming it interfered with her ability to visit the child and thus show the child could be returned to the mother's care. We have little doubt the child's move to Nebraska posed a challenge for the mother.

However, we disagree with the claim that it substantially changed the complexion of this case. By the time the child moved, the mother had already dropped out of treatment. Also, within a few weeks of the move, the mother once again dropped off the DHS radar and was not participating in any visits or with any services. Once the mother's whereabouts became known, it was discovered the mother had continued or resumed her relationship with her violent boyfriend, moving even farther away from the child to be with the boyfriend rather than prioritizing the child.

Given the fact the child had been removed from the mother's care due to safety concerns surrounding the mother's relationship with the violent boyfriend, the mother's continued involvement with him sabotaged any reunification efforts. Fourteen months following removal, at the time of the termination hearing, the mother was no closer to being able to have the child returned. The mother not only failed to distance herself from the abusive boyfriend, but she moved farther away from the child to continue the relationship with the boyfriend. She had no known housing, transportation, or employment. Meanwhile, the child continued to receive mental-health services to address, among other issues, the anxiety and other adverse effects of the mother's sporadic involvement in the child's life. Based on these circumstances, we agree with the juvenile court's conclusion that the child could not be safely returned to the mother's custody, thereby satisfying the fourth element of section 232.116(1)(f) and the grounds for termination.

### C. Best Interests of the Child & Permissive Factors.

The mother also challenges the juvenile court's finding with regard to the best interests of the child. *See* Iowa Code § 232.116(2). In doing so, she includes arguments related to the child being placed with a relative and her claimed bond

with the child, both of which implicate the third step, the permissive exceptions of section 232.116(3). We will address these two steps separately.

As to the mother's claim that termination is not in the child's best interests, we note the child's safety and the need for a permanent home are the "defining elements in a child's best interest." *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (quoting *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially)). The mother provided neither. She has prioritized her relationship with a violent man over the child's safety. She has not provided a stable home. In fact, at the time of the termination hearing, the mother had no known home or means of providing one. In contrast, the grandparents have provided a safe and stable home for the child. On our de novo review, we find it to be in the child's best interests to terminate the mother's parental rights.

Turning to the permissive exceptions, Iowa Code section 232.116(3) provides multiple possible exceptions to termination, the following two of which are raised by the mother:

> The court need not terminate the relationship between the parent and child if the court finds any of the following:
> a. A relative has legal custody of the child.
> . . . .
> c. There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.

The exceptions to termination set forth in section 232.116(3) are permissive, not mandatory, so the court is not required to apply them even if they have been established. *A.S.*, 906 N.W.2d at 475. The parent resisting termination bears the burden of proof to establish an exception under section 232.116(3). *Id.* at 476.

The mother established that a relative had legal custody of the child, so the exception in section 232.116(3)(a) is an option. However, she failed to establish that this permissive factor should be applied to negate termination. "An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). Here, not only have the grandparents stepped up to care for this child, they have also cared for the mother's other children. The grandparents are providing a stable home, which the mother has been unable or unwilling to provide. Their willingness to pick up the slack caused by the mother's parenting deficiencies does not warrant denying termination.

The mother claims her bond with and love for the child should prevent termination pursuant to section 232.116(3)(c). We disagree. First, the statute requires "clear and convincing evidence that termination would be detrimental to the child due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). Even if we were to assume the mother established a close bond, which is debatable, there was not clear and convincing evidence termination would be detrimental to the child. In fact, the evidence established the opposite. The child suffered negative effects as a result of the disruption to the child caused by the mother's on-again, off-again involvement. Second, while we have no doubt the mother loves the child, love is not enough to trigger this exception. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) (noting the consideration when assessing the exception in section 232.116(3)(c) is not the parent's love for the child, but whether the child will be disadvantaged by termination). The disadvantages of

termination do not overcome the safety concerns that would come with denying termination.

### D. Additional Time.

The mother asks that termination be denied and argues she should be given an additional six months to work toward reunification pursuant to Iowa Code section 232.104(2)(b). We find this argument unpersuasive. Before giving the mother an additional six months, we would be required to make a determination the need for removal will no longer exist at the end of the extension. *Id.* § 232.104(2)(b); *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). We find no persuasive evidence allowing us to make this determination. The mother is no closer to being a safe placement option now than when removal occurred. If anything, she is farther away, both physically and practically. Having no persuasive evidentiary support in the record convincing us things will be better, let alone good enough for reunification, in six months' time, we conclude the mother is not entitled to additional time.

**AFFIRMED.**